1992 WL 601890

Douglas Arthur MIDDLETON, Petitioner,

v.

James P. MURPHY, Warden, Columbia Correctional Institution, Portage, Wisconsin, Respondent.

No. 91–C–0751–C. | Jan. 28, 1992.

## Attorneys and Law Firms

Meredith J. Ross, Madison, WI, for Douglas Arthur Middleton.

Sally Wellman, Asst. Atty. Gen , Madison, WI, for Jamess P. Murphy.

Opinion

## OPINION AND ORDER

CRABB, District Judge.

*1 This is a petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the Columbia Correctional Institution in Portage, Wisconsin, contends that he is in custody in violation of the Constitution of the United States. Petitioner seeks relief on the grounds that his pre-trial confessions were obtained improperly and used against him improperly at trial; that because the confessions were used at trial he was forced to take the stand against his will; and that without the confessions and testimony, the evidence at trial would have been insufficient to convict him. Respondent asserts that petitioner's oral and written confessions were obtained legally and were not admitted erroneously at trial; that even if the confessions were obtained illegally and so admitted erroneously, petitioner waived his objection to their admission by testifying at trial; and that because the question whether testimony at trial is impelled is a question of fact, the Wisconsin Court of Appeals was correct when it applied the clearly erroneous standard to the trial court's finding that petitioner's testimony was not impelled.[1] Petitioner has exhausted his state remedies as required under 28 U.S.C. § 2254.[2]

After reviewing the entire record, I conclude that the state trial court was correct in concluding that petitioner did not invoke his right to counsel before confessing, and I conclude that, as a matter of law, the arrival of petitioner's attorney at the police station was not a fact of which the police were required to advise petitioner, so that the trial court did not err in admitting the confessions into evidence. Because his oral and written confessions were constitutionally admissible, petitioner's testimonial confession was not impelled. The petition for writ of habeas corpus will be denied.

In considering habeas corpus petitions, the district court presumes state court findings of fact to be correct unless, upon consideration of the record as a whole, it concludes that the factual determinations are not "fairly supported" by the record. 28 U.S.C. § 2254(d)(8); United States ex rel. Savory v. Lane, 832 F.2d 1011, 1019 (7th Cir.1987). Petitioner does not object to the accuracy or completeness of the state court findings of fact, except for the trial court finding that his testimony at trial was not impelled. I adopt the following facts, based on the Wisconsin Court of Appeals' decisions in State v. Middleton, 135 W.2d 297, 399 N.W.2d 917 (Ct.App.1986) and State v. Middleton, 1988 Wisc.App. LEXIS 796 (Ct.App.1988), supplemented by pertinent facts from the record.

## FACTS FOUND BY STATE COURTS

Petitioner murdered Hilda Miller, age 72, late on June 4 or early on June 5, 1984, in Edgerton, Wisconsin. He bludgeoned her with a hammer and then robbed her and set her apartment on fire. Between 10:00 and 10:30 a.m. on June 5, Lt. Toler of the Rock County, Wisconsin, Sheriff's Department arrested petitioner, advised him of his Miranda rights including his right to consult with a lawyer before and during questioning, and took him to the sheriff's department.

*2 At about 1:16 p.m., petitioner requested that a deputy sheriff place a call to petitioner's home. The deputy heard petitioner tell his wife that he was in the Rock County Jail and ask her to contact Gregory Hunsader. The deputy knew that Hunsader was a local lawyer, but petitioner did not refer to Hunsader as a lawyer during the conversation.

After the telephone call, the deputy turned petitioner over to the detective bureau for questioning. The deputy did not inform the detectives that petitioner had asked his wife to call Hunsader.

Three detectives began questioning petitioner at about 1:30 p.m. Lt. Toler initiated the session by asking petitioner whether he understood his Miranda rights; petitioner said that

198

he did. At no time did petitioner ask to see Hunsader or any other lawyer.[3] Sometime between 1:20 and 2:30 p.m. on June 5, petitioner confessed orally that he had murdered Hilda Miller.

At about 1:20 p.m., petitioner's wife called Hunsader and left a message that he should meet petitioner at the jail. Hunsader received the message at about 2:10. When he arrived at the jail at about 2:20, he asked to see petitioner. A deputy told Hunsader to wait because no interview room was available; at about 2:30 p.m. one of the interrogating detectives was told that Hunsader wanted to see petitioner. The detective informed Lt. Toler, who replied that petitioner had not requested a lawyer. The detective told Hunsader that petitioner had not asked for a lawyer, and refused to tell petitioner that his wife had arranged for Hunsader to meet him. The detective told Hunsader he could meet with Middleton if the district attorney agreed; at about 2:50 p.m. the detective told Hunsader that a lawyer in the district attorney's office had refused Hunsader permission to interview petitioner.

Between 2:44 and 3:56 p.m., after again receiving *Miranda* warnings, petitioner waived his rights in writing and gave a written statement to the detectives. Later in the afternoon, he gave two more written statements; before each, the detectives advised him of his rights and he waived them in writing.

Petitioner was alert and responsive during the questioning. He was not threatened and was not promised leniency.[4]

Before trial, petitioner offered a motion in limine, asking that his confessions be excluded from evidence. The state court judge denied petitioner's motion, finding that the deputy who had overheard petitioner tell his wife to call Hunsader had no duty to tell the interrogating detectives, and that because petitioner had been advised of his *Miranda* rights, and understood them, before he was questioned and before he gave his statements, his oral and written confessions were voluntary, were not coerced or the product of improper police pressure, and therefore were admissible.

At trial, the state introduced the confessions into evidence. Petitioner took the stand, testifying in his own defense that he had indeed killed Hilda Miller, but adding that he had been so intoxicated that he could not have formed the requisite intent for a conviction of first degree murder.

*3 On September 1, 1984, the jury returned guilty verdicts against petitioner on the charges of first degree murder, armed

robbery, and arson. The court entered judgment and sentenced petitioner to life for the murder conviction, ten years for the armed robbery conviction, and five years for the arson conviction.

Petitioner appealed his convictions on the grounds that he invoked his right to counsel when the deputy overheard him ask his wife to contact Hunsader, that his interrogation should have ceased at that point, that his confessions should have been suppressed because the interrogation did not cease, that his trial testimony was impelled by the admission of the illegal confessions, and that the admission of the confessions was reversible error because the state did not have enough evidence to convict him without the confessions. The court of appeals ruled that petitioner had not invoked his right to counsel when the deputy overheard him ask his wife to call Hunsader, but that any confession obtained after Hunsader arrived at the sheriff's department was obtained in violation of petitioner's due process rights under the Fifth and Fourteenth Amendments because petitioner's confessions were not given after a knowing and voluntary waiver of his *Miranda* rights if he did not know his attorney had arrived at the station. The court of appeals found it undisputed that the three written confessions were given after Hunsader's arrival, and therefore should have been suppressed. On the record before it, however, the court of appeals could not determine whether petitioner's oral confession had been obtained before or after Hunsader arrived. The court of appeals remanded the case to the trial court for determination of two issues: 1) whether the oral confession had been obtained before or after 2:20 p.m., when Hunsader arrived at the department, and 2) if the confession was obtained after 2:20 p.m., and therefore was inadmissible, whether petitioner's testimony at the trial was freely given or impelled by the admission of the inadmissible confessions. At an evidentiary hearing on remand, the trial court determined that petitioner had given his oral confession after Hunsader arrived at the sheriff's department, and that the confession had been admitted erroneously into evidence. The court concluded also that the state's use of the confessions did not impel petitioner to testify, but that petitioner testified in order to make second-degree murder a jury issue, thereby waiving his objection to the admission of the inadmissible confessions and rendering the court's error harmless. To reach its decision that petitioner's testimony was not impelled, the trial court, at the direction of the court of appeals, reviewed the state's case independently of the tainted evidence, and the impact of the tainted evidence on the jurors in light of the other evidence. The court based its finding that petitioner's testimony was not impelled on petitioner's sister's testimony, the state's evidence other than the confessions, and the trial

199

court's conclusion that petitioner would be entitled to a second-degree murder instruction only if he testified.

*4 Petitioner appealed the trial court's decision a second time. In *State v. Middleton*, 1988 Wis.App. LEXIS 796, the court of appeals, deeming the question whether petitioner's testimony at trial was impelled to be a question of fact, applied a clearly erroneous standard of review to the trial court's finding that petitioner's testimony at trial was not impelled. The court of appeals found sufficient evidence in the record to support the trial court's finding, and so upheld its decision and petitioner's conviction. The Supreme Court of Wisconsin denied review when petitioner appealed.

## OPINION

Petitioner raises several challenges to the findings and procedures of the Wisconsin courts that convicted him of murder, robbery and arson. The basis of the challenges is that the state courts committed federal constitutional error by ruling that petitioner's trial testimony was not impelled after finding that his pre-trial confessions were obtained illegally. The federal habeas court "can grant habeas relief only when there is a violation of federal statutory or constitutional law," and reviews *de novo* such questions. *Brewer v. Aiken*, 935 F.2d 850, 854–55 (7th Cir.1990) (quoting *United States ex rel, Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir.1989). Because it is dispositive of all of petitioner's challenges, I will begin with the challenge to the state court holdings that respondent raises in its response to this petition for habeas corpus.

Respondent asserts that the trial court was correct in the first instance when it allowed into evidence the confessions of petitioner. The court of appeals determined in petitioner's first appeal that any confession secured after Hunsader's arrival at the sheriff's department was obtained illegally and was inadmissible. *Middleton*, 135 Wis.2d at 313–14. The court held that petitioner had "shown no reasonable basis ... to believe that the police would understand that he wanted an attorney, [and that therefore he] did not invoke his right to counsel," *id.* at 310, but then went on to hold that any confession obtained after the lawyer arrived at the station was inadmissible because "the knowing quality of Middleton's waiver [of his *Miranda* rights] disappeared when the facts of his interrogation were changed without his knowledge." *Id.* at 313.

The foundation of the right to counsel at issue is the Fifth Amendment privilege against self-incrimination and the requirement that suspects be warned prior to custodial interrogation that they have the right to remain silent and the right to have a lawyer present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 469 (1966). Statements made by a suspect during interrogation are not admissible to establish guilt unless the suspect is informed of and waives his *Miranda* rights prior to making the statements. If a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444–45. Once a suspect invokes his right to counsel, before or during questioning, "the interrogation must cease until an attorney is present." *Id.* at 474.

*5 However, if a suspect does not invoke his right to counsel, but rather waives the right, then the interrogation may proceed. This is true even if a lawyer, either on her own or at the behest of a third party but without the knowledge of the suspect, arrives at the interrogation site and asks to consult with the suspect. *Moran v. Burbine*, 475 U.S. 412, 422–23 (1986). The reasoning is that the right to counsel belongs to the suspect rather than the lawyer, that it is the suspect who must make the knowing waiver, and that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422.

After being informed of his *Miranda* right to counsel, petitioner could choose one of two routes: he could choose not to invoke his right to counsel, in which case his interrogation could continue even after a lawyer appeared and wanted to see him, or he could invoke his right to counsel, in which case his interrogation had to stop immediately and could not continue until his counsel was in the interrogation room with him. *Miranda*, 384 U.S. at 474; *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486 (1990). Whether the interrogating officers were required to inform petitioner that the lawyer had asked to see him depended on whether petitioner had invoked his right to counsel.

Petitioner asserts that he did so when, after his arrest and after he was advised of his *Miranda* rights, he asked a deputy to place a call to his home and the deputy overheard petitioner tell his wife that he was in jail and she should contact Gregory Hunsader. Petitioner did not refer to Hunsader as a lawyer, and in the five times he was given his *Miranda* warnings or the three times he signed a written waiver of his right to counsel, he did not ask to see Hunsader or any other lawyer. [5] The court of appeals found the comment from petitioner to his wife to be insufficient to invoke his right to counsel because petitioner failed to communicate to the police his desire to have a lawyer present. *Middleton*, 135 Wis.2d at

309-10. The court observed that "we see no reason why indirect communication should be ineffective [to invoke the right to counsel] so long as the suspect has reason to believe the communication is effective," but found that the record failed to show that petitioner had a reason to believe he had made such a communication to the police. *Id.*

The court of appeals' holding that petitioner did not invoke his right to counsel is supported by the decisions of the Court of Appeals for the Seventh Circuit and the United States Supreme Court. Most recently, the Supreme Court has specified that the test for whether a suspect has invoked his right to counsel is not "the *likelihood* that a suspect would wish counsel to be present," but rather that he "ha[s] *expressed* his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*." *McNeil v. Wisconsin*, 111 S.Ct. 2204, 2209 (1991) (emphasis in original). Expression "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" *Id.* (emphasis in original). In *McNeil*, a suspect was represented by a public defender at an initial appearance, as was his right under the Sixth Amendment. Later in the day, he was taken to an interrogation room to be questioned about several different offenses, and given his *Miranda* warnings. After signing a waiver form, he confessed to the crimes. He sought then to suppress his confession on the ground that he had invoked his right to counsel at the initial appearance, and so could not be interrogated thereafter without his lawyer present.

*6 The Supreme Court differentiated between the Fifth Amendment prophylactic right to counsel designed to counteract the pressures of custodial interrogation and the Sixth Amendment right to counsel for accused criminal defendants. *Id.* at 2208. The Sixth Amendment right to counsel attaches when a prosecution is commenced and is "offense-specific," so that invocation of it pertains to the particular offense with which a suspect is charged. *Id.* at 2207-08. It cannot be invoked once for all future prosecutions. *Id.* at 2207. On the other hand, the Fifth Amendment right to counsel is non-offense-specific, so that when it is invoked no interrogation for any offense can occur until a lawyer is present *Id.* at 2208. In order to invoke it, a suspect must express "a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" *Id.* at 2209. In the *McNeil* context, this means that a Sixth Amendment invocation of right to counsel at an initial appearance does not translate into a Fifth Amendment invocation of right to counsel at a later interrogation for a different offense because the suspect did not express his desire to have a lawyer assist him in the interrogation.

In *Quadrini v. Clusen*, 864 F.2d 577 (7th Cir.1989), the Court of Appeals for the Seventh Circuit considered the question of what constitutes invocation of the right to counsel. In *Quadrini*, a suspect who was being interrogated stated that he did not want a lawyer and signed a *Miranda* waiver, but then showed the officers the business card of a public defender and told the officers that he had been told by the public defender not to make a statement. *Quadrini*, 864 F.2d at 582. The court found that the suspect had waived his right to counsel unequivocally, even though he had produced the business card of a lawyer and told the officers of the lawyer's advice. *Id.* at 582-83. The officers knew that the suspect had met already with a lawyer about the charges he faced, but that alone was not enough to invoke his right to counsel; the suspect had to ask for the lawyer to be present at the interrogation.

In this case, petitioner failed to invoke his Fifth Amendment right to counsel. He never asked to see a lawyer and he signed a waiver of his right to counsel three times. It was only by chance that the deputy who overheard petitioner ask his wife to call Hunsader knew that Hunsader was a lawyer; petitioner could have no reasonable expectation that his call to his wife would be understood as an invocation of counsel. Even if petitioner had told his wife to call a lawyer, rather than just calling Hunsader by name, he would not have successfully invoked his right to counsel during interrogation because he did not say that he wanted the lawyer for that purpose. In order to invoke his right to counsel during an interrogation, a suspect must express "a desire for the assistance of an attorney *in dealing with custodial interrogation.*" *McNeil*, 111 S.Ct. at 2209 (emphasis in original). Petitioner did not ask for a lawyer at all, much less ask for one to be present for interrogation.

*7 Because petitioner did not invoke his right to counsel when he called his wife, and then waived the right when he was given his *Miranda* warnings, the interrogating officers were not required to inform him when the lawyer arrived at the station. Petitioner did not ask for a lawyer; therefore the lawyer's attempt to see him was unilateral. *Moran v. Burbine*, 475 U.S. at 420, makes clear that a suspect's right to a lawyer belongs to the suspect, and cannot be invoked by a lawyer. *Id.* at 424-25. Petitioner validly waived his right to the presence of counsel. There is no allegation that the waiver was coerced by physical or psychological pressure. Although knowledge that a lawyer was willing to see him "might have affected his decision to confess, ... [the Supreme Court has] never read the

Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Id.* at 422. Petitioner offered his confessions after a valid waiver of his right to counsel, and those confessions were admissible at his trial.

Because the confessions constituted admissible evidence, it was not a violation of the federal constitution for the trial court to admit them at trial. Because the confessions were admissible, petitioner cannot argue that his testimony was impelled by the introduction of tainted evidence. Petitioner's conviction must stand; his petition for habeas corpus will be denied.

**ORDER**

IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DENIED on the grounds that the trial court did not err when it admitted his confessions into evidence at his trial and that his testimony was not impelled by the introduction of inadmissible evidence.

Footnotes

1 The term "impel" means to incite to action, or to induce, influence, or urge. *Webster's New International Dictionary*, 1248 (2d ed. 1957). Its meaning is similar to that of "compel": "compel is the stronger word, connoting force or coercion, with little or no volition on the part of the one compelled. Impel connotes persuasive urging, with some degree of volition on the part of the one impelled." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 130 (1987). Thus it would seem that petitioner's claim is that his testimony at trial was compelled—that he had no choice but to testify—rather than impelled—that he was persuaded to do so. In *Harrison v. United States, 392 U.S. 219 (1968)*, the seminal Supreme Court case concerning trial testimony tainted by illegally obtained and admitted confessions, Justice Stevens referred to such testimony as "impelled." Because the term has become part of the legal lexicon in cases such as this one, I will use it even though it is not precisely accurate.

2 In his response to the petition for writ of habeas corpus, respondent denied that petitioner has exhausted his state court remedies to the extent that he is claiming that the state appellate court failed to follow appropriate appellate procedures. Because I have decided that the trial court did not err when it admitted petitioner's confessions at trial, and that therefore his testimony was not impelled by inadmissible confessions, any claim by petitioner that the state appellate court failed to follow appropriate procedures is moot. Therefore there is no state court remedy to exhaust on that procedural issue.

3 At trial, petitioner claimed that he told the detectives he wanted to call Hunsader; the trial court disbelieved him.

4 Petitioner claimed at trial that he told the interrogating detectives that he was exhausted and wanted rest, but the court believed the officer's testimony to the contrary.

5 Petitioner claimed at trial that he told the detectives he wanted to call Hunsader, but the trial court disbelieved him. "It is well-settled law that a court of appeals does not stand in judgment of the credibility of witnesses. Rather that question is left to the sound discretion of the trier of fact." *Quadrini v. Clusen*, 864 F.2d 577 (7th Cir.1989) (citations omitted).

¶ 98. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I join the majority opinion insofar as it concludes that (1) Stevens' privilege against self-incrimination, guaranteed by both the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution, was not violated; and (2) this court's decision in *Blum v. 1st Auto & Casualty Insurance Co.,* 2010 WI 78, ¶ 56, 326 Wis. 2d 729, 786 N.W.2d 78, did not require the court of appeals to disregard *State v. Middleton,* 135 Wis. 2d 297, 399 N.W.2d 917 (Ct. App. 1986), in its entirety. I concur and write separately to clarify the majority opinion's discussion of *Blum* at ¶¶ 91–94.

¶ 99. In *Blum,* a majority of this court concluded that "a court of appeals decision expressly overruled by this court no longer retains any precedential value, unless this court expressly states that it is leaving portions of the court of appeals decision intact." 326 Wis. 2d 729, ¶ 56. Quite obviously, prior to *Blum,* no court could have known that it was expected to utilize magic language when partially overruling a court of appeals decision. In short, the *Blum* rule can be understood only with common sense in mind. In applying the rule, we simply must determine whether the court, in "overruling" a court of appeals decision, intended to overrule the entire decision or only a portion thereof.

¶ 100. I respectfully concur in order to clarify the *Blum* rule.

¶ 101. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.

¶ 102. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part and dissenting in part*). I join the majority opinion with respect to the discussion of the "*Blum*

issue" at ¶¶ 91–94. I dissent from the rest of the opinion relating to the *Miranda* issue.

¶ 103. As the majority notes with regard to the *Miranda* issue, "[t]he present case is like a law school exam question." Majority op., ¶ 47. The case presents a fact situation not previously faced by this court or, as best I can determine, by any other court. The members of this court, like law students, have to reach a decision on the basis of past cases (not directly on point), constitutional principles, and pragmatic concerns.

¶ 104. Here are the basic facts: During an initial interrogation, after receiving the first *Miranda* warnings, Stevens invoked his Fifth Amendment right to counsel. The questioning stopped—as it should. Shortly thereafter, Stevens expressed interest in cancelling his invocation of the right to counsel and in resuming discussion with the detective. He had the right to do so. Stevens was placed in a cell. Several hours passed before a law enforcement officer returned to talk with Stevens. During this several-hour hiatus, Stevens' attorney arrived at the police station. The police officers failed to inform Stevens of his attorney's arrival and refused to allow the attorney to see Stevens. When the law enforcement officers returned to talk with Stevens, Stevens was given the *Miranda* warnings, waived his rights, and made statements that he now seeks to suppress.

¶ 105. This court must determine whether the law enforcement officers violated the Fifth Amendment when they failed to inform Stevens of his attorney's arrival after Stevens expressed interest in cancelling his invocation of his right to counsel but before he received a second *Miranda* warning and waived his right to counsel. In other words, does a suspect's initiation of conversation with law enforcement officers

after the suspect invokes the right to counsel constitute a waiver of the right to counsel in the absence of a second *Miranda* warning?[1]

¶ 106. The facts of the present case differ from prior cases. As the majority acknowledges, this case is distinguishable from *Moran v. Burbine,* 475 U.S. 412 (1986), *State v. Hanson,* 136 Wis. 2d 195, 401 N.W.2d 771 (1987), and *State v. Ward,* 2009 WI 60, 318 Wis. 2d 301, 767 N.W.2d 236. In these cases, the suspects never explicitly invoked their right to counsel while in custody. Majority op., ¶ 70. For the same reason, the present case is distinguishable from *State v. Middleton,* 135 Wis. 2d 297, 399 N.W.2d 917 (Ct. App. 1986), which seems to play a major role in the majority opinion.

¶ 107. With regard to the fact situations presented by *Moran, Hanson, Ward,* and *Middleton,* I agree with the majority opinion that the United States Supreme Court and this court have held that a suspect who has not invoked the right to counsel does not have the right to be informed that counsel who intends to represent the suspect is available to speak with the suspect, and counsel need not be given the opportunity to speak with the suspect.

¶ 108. With regard to the different fact situation presented in the instant case, I disagree with the majority. Unlike the majority, I conclude that Stevens' Fifth Amendment rights were violated. My conclusion, like the majority's to the contrary, is driven by a synthesis of principles derived from federal and state case law. My conclusion is also driven by the federal and state consti-

---

[1] The majority states the issue as follows: "[T]he critical issue is whether Stevens' invocation of the right to counsel . . . survived his almost immediate initiation of conversation with his interrogator in which he emphatically asked to resume the questioning . . . ." Majority op., ¶ 58.

tutional provisions enshrining the right against self-incrimination (including the right to counsel during *custodial interrogation*) and by the pragmatic need to minimize the grave personal and societal harms flowing from the impairment of these rights. The line between encouraging voluntary, true confessions and coercing confessions, whether true or false, is narrow. Today's majority is all too willing to ignore that line.[2]

## I

¶ 109. The majority appears to acknowledge, and I agree, that once a suspect has invoked the right to counsel, not only must interrogation cease, but the suspect also has a right to be informed that an attorney has arrived at the station to speak with him. Majority op., ¶¶ 67–70. The United State Supreme Court declared in *Miranda v. Arizona,* 384 U.S. 436 (1966), that once a suspect invokes his or her right to counsel, "the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."[3] *Miranda* thus provides that a

[2] As I explain in Part IV, below, even if I agreed with the majority's Fifth Amendment analysis, I would conclude that the Wisconsin Constitution warrants a different result.

[3] *Miranda v. Arizona,* 384 U.S. 436, 474 (1966).

The Seventh Circuit's decision in *Middleton v. Murphy,* No. 92–1498, unpublished slip op. (7th Cir. June 21, 1993) also indirectly supports the proposition that a suspect who has invoked the right to counsel must be informed that an attorney has arrived. The district court (whose opinion was attached to the Seventh Circuit's decision) stated that "[b]ecause petitioner *did not invoke his right to counsel* when he called his wife, and then waived the right when he was given his *Miranda* warnings, the interrogating *officers were not required to inform him when the lawyer arrived* at the station." *Middleton,* No.

suspect has two rights to counsel: (1) The right to consult with counsel prior to questioning; and (2) the right to have counsel present during any questioning.[4]

¶ 110. According to the majority opinion, law enforcement did not have to inform Stevens that his attorney had arrived because Stevens "cancelled" his request for counsel. And how did Stevens cancel his invocation of his right to counsel? According to the majority opinion at ¶ 4, Stevens "cancelled his invocation of that right by initiating a dialogue in which he asked to continue the interrogation." *See also* majority op., ¶ 74. The majority explains that Stevens' "cancellation of the request for counsel was confirmed by the fact that Stevens made no effort to secure counsel while his interrogator was absent, by his recorded agreement that he initiated the conversation asking to resume questioning, and by his waiver of the right to counsel after receiving a second *Miranda* warning." Majority op., ¶ 4.

¶ 111. In the present case, counsel appeared at the police station before Stevens "confirmed" his cancellation of his invocation of the right to counsel. Stevens' counsel appeared at the police station asking to see Stevens before Stevens waived his right to counsel after the second *Miranda* warning. Majority op., ¶¶ 19, 73–74. As I explain below, the majority's conclusion that Stevens lost the rights he had gained by invoking the right to counsel merely by initiating conversation with the police, as opposed to both initiating conversation with the police

92–1498, unpublished slip op. at 7 (7th Cir. June 21, 1993) (emphases added). The converse is also true: If the petitioner *did* invoke his right to counsel and had not yet waived that right, the interrogating officers *were* required to inform him that his lawyer had arrived.

[4] *Miranda,* 384 U.S. at 470; *Florida v. Powell,* 130 S. Ct. 1195, 1206 (2010).

*and* knowingly, intelligently, and voluntarily waiving the right to counsel, is not compelled by precedent.

¶ 112. I conclude that Stevens' invocation of his right to counsel during interrogation lasted until he knowingly, intelligently, and voluntarily waived that right. In this case, Stevens' only effective waiver came after the second *Miranda* warning. Stevens' waiver of counsel came after Stevens' counsel appeared at the police station to speak with Stevens. I therefore conclude that Stevens' Fifth Amendment right to counsel was violated when law enforcement failed to advise Stevens that counsel was available to speak with him.

¶ 113. My conclusion is supported by the United States Supreme Court's decision in *Oregon v. Bradshaw,* 462 U.S. 1039 (1983). In *Bradshaw,* eight justices (the four in the plurality and the four in dissent) agreed that in order for the interrogation of a suspect to continue without counsel once the suspect has invoked his or her right to counsel, two requirements must be met: (1) the suspect must, on his or her own accord, reopen dialogue with his interrogators; and (2) the suspect must again knowingly, intelligently, and voluntarily waive his *Miranda* rights.[5]

¶ 114. According to eight justices in *Bradshaw,* the suspect's mere initiation of conversation with law enforcement does not suffice to show a waiver of the previously asserted right to counsel. Rather, two steps

---

[5] *See Oregon v. Bradshaw,* 462 U.S. 1039, 1044 (1983) (plurality opinion); *Bradshaw,* 462 U.S. at 1054 n.2 (Marshall, J., dissenting).

"The only dispute between the plurality and the dissent in this case concerns the meaning of 'initiation' for purposes of *Edwards'* per se rule." *Bradshaw,* 462 U.S. at 1054 n.2 (Marshall, J., dissenting).

must be analyzed before the suspect loses the rights he gained by invoking the right to counsel: the initiation step and the waiver step.[6]

¶ 115. I recognize that the present case is not governed precisely by *Bradshaw*. In *Bradshaw,* the Court did not address the right of a suspect to be informed of an attorney's arrival. I do not claim that *Bradshaw* is on all fours with the present case. Nevertheless, *Bradshaw* is instructive and supports my conclusion.

¶ 116. *Bradshaw* addressed one of the rights gained by invoking the right to counsel—the right not to be subjected to further interrogation—and held that the right stays with the suspect until the suspect initiates further conversation *and* the police obtain a

[6] The plurality and dissenting justices agreed on this point.

As the plurality in *Bradshaw* stated, the lower court "was wrong in thinking that an 'initiation' of a conversation or discussion by an accused not only satisfied the *Edwards* rule, but *ex proprio vigore* suffices to show a waiver of a previously asserted right to counsel. The inquiries are separate, and clarity of application is not gained by melding them together." *Bradshaw,* 462 U.S. at 1045.

The dissenting justices in *Bradshaw* agreed, stating: "If an accused has himself initiated further communication with the police, it is still necessary to establish as a separate matter the existence of a knowing and intelligent waiver under *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)." *Bradshaw,* 462 U.S. at 1054 n.2 (Marshall, J., dissenting).

The majority opinion refers to *Oregon v. Bradshaw,* 462 U.S. 1039 (1983) in ¶ 52. The majority explains *Bradshaw* as follows: "When the accused initiates communication with police, the paradigm is reset and police may explore whether the accused is willing to answer questions. They may proceed with custodial interrogation if the accused again is given a *Miranda* warning and again waives his *Miranda* rights."

knowing, intelligent, and voluntary waiver by giving the suspect a *Miranda* warning.[7]

¶ 117. The present case addresses another right gained by a suspect who invokes the right to counsel— the right to be informed of an attorney's arrival at the station. To be consistent with *Bradshaw,* this court should hold that this right, like the right not to be subjected to further interrogation, stays with the suspect until the suspect initiates further conversation *and* the police obtain a knowing, intelligent, and voluntary waiver.

¶ 118. *Bradshaw* teaches that a suspect does not automatically waive his Fifth Amendment right to counsel by simply initiating a conversation regarding the investigation.[8] A suspect's cancellation of his Fifth Amendment right to counsel (after having invoked the right to counsel) requires a two-prong analysis. Separate inquires must be made and both prongs must be satisfied before the suspect loses the rights he gained by invoking the right to counsel.[9]

¶ 119. This court followed the *Bradshaw* two-prong analysis for continuation of interrogation of a suspect who has invoked his Fifth Amendment right to

---

[7] "[T]he question would be whether a valid waiver of the right to counsel . . . had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Bradshaw,* 462 U.S. at 1045 (quoting *Edwards v. Arizona,* 451 U.S. 477, 486 n.9 (1981)).

[8] *Bradshaw,* 462 U.S. at 1044.

[9] The majority alludes to the two required steps under *Bradshaw* and *Hanson* at ¶¶ 52 and 74.

counsel. In *State v. Hambly,*[10] the court held that after a suspect effectively invokes his Fifth Amendment *Miranda* right to counsel, the State must meet two criteria to renew interrogation:

(A) The State has the burden to show that the suspect initiated further conversation with law enforcement.

(B) The State has the burden to show that the suspect waived the right to counsel voluntarily, knowingly and intelligently; that is, the waiver of counsel must be a knowing, intelligent, and voluntary waiver of a known right.[11]

¶ 120. In *Hambly,* as in the present case, the first criteria was satisfied. The *Hambly* court then examined the facts to determine whether Hambly's waiver of his right to counsel after the second *Miranda* warnings were given was knowing, intelligent, and voluntary.[12]

¶ 121. In the present case, when Stevens initiated conversation with the detective shortly after invoking his right to counsel, according to the law enforcement officer, Stevens said that "it was his [Stevens'] intention once again to waive his right to an attorney." *See* majority op., ¶¶ 18, 71. Stevens is not quoted as, or treated as, knowingly, intelligently, and voluntarily waiving his right to counsel at the moment when he initiated conversation with law enforcement officers.

¶ 122. The majority opinion does not assert that Stevens' initiation of conversation with the law enforcement officer was a valid waiver of his right to counsel. The majority opinion does not claim that Stevens

---

[10] *See State v. Hambly,* 2008 WI 10, ¶¶ 69–70, 307 Wis. 2d 98, 745 N.W.2d 48.

[11] *Hambly,* 307 Wis. 2d 98, ¶¶ 68–70.

[12] *Id.,* ¶¶ 98, 99.

waived his right to counsel before he was given the second Miranda warning. Nothing in the record establishes that Stevens knowingly, intelligently, and voluntarily waived his right to counsel before he was given the second *Miranda* warning.

¶ 123. Thus when Stevens' attorney arrived at the police station before the second *Miranda* warnings were given, Stevens had not yet effectively cancelled his invocation of the right to counsel.

¶ 124. The majority opinion incorrectly treats Stevens' initiating communications with law enforcement as a per se cancellation of his earlier invocation of the right to counsel. Stevens' initiating communications with law enforcement did not, in and of itself, constitute a knowing, intelligent, and voluntary waiver of the previously invoked right to counsel. Initiating conversation with law enforcement simply made it possible for there to be a subsequent knowing, intelligent, and voluntary waiver of the right to counsel.

¶ 125. The record demonstrates that the police did not obtain a knowing, intelligent, and voluntary waiver of the right to counsel until after Stevens' counsel appeared at the police station. Therefore, during the interval between Stevens' initiating conversation with the police and the second *Miranda* warning, Stevens' invocation of the right to counsel was still in existence and he had a right to be informed that his attorney had arrived and to consult with his attorney if he wished to do so. This right was violated in the present case.

¶ 126. The majority does not apply the principles of *Bradshaw* and *Hambly* to the present case. The majority treats a suspect's initial invocation of the Fifth Amendment right to counsel as a nullity once the suspect initiates conversation with law enforcement. The majority has no authority to support this thesis. The majority

pieces together snippets from case law not addressing the issue presented in the instant case to support its conclusion that we may treat the invocation of the right to counsel as if it never occurred because the defendant merely initiated conversation with law enforcement.

¶ 127. The majority complains that my dissent "transform[s] *Bradshaw* into a rule that an accused's invocation of the Fifth Amendment right to counsel remains completely intact, no matter what the accused says to withdraw or cancel that invocation, until he is given and waives a second *Miranda* warning." Majority op., ¶ 52 n.9. The majority misstates my position.

¶ 128. My position is that a suspect's invocation of the Fifth Amendment right to counsel remains intact until (1) the suspect, on his or her own accord, reopens dialogue with the interrogators, and (2) the suspect knowingly, intelligently, and voluntarily waives his or her *Miranda* rights. *See* ¶¶ 112–117, *supra*. This interpretation of *Bradshaw* and application of *Bradshaw* to the present case properly recognizes the sanctity of a suspect's invocation of the right to counsel and the crucial importance of a knowing, intelligent, and voluntary waiver of that right.

¶ 129. It seems likely that a suspect's initiation of conversation will usually be followed almost immediately by the interrogators' obtaining a knowing, intelligent, and voluntary waiver of the right to counsel from the suspect (typically by administering *Miranda* warnings). In the present case, however, there was a significant gap between the suspect initiating conversation and the suspect knowingly, intelligently, and voluntarily waiving the right to counsel. The waiver did not occur until hours later (after counsel had arrived at the station) when the second *Miranda* warnings were given.

¶ 130. Thus, I conclude that Stevens' statements during the second custodial interrogation were obtained in violation of *Miranda, Edwards,* and *Bradshaw,* and should have been suppressed. As I see it, precedent more strongly commands the outcome I urge than the outcome the majority reaches.

II

¶ 131. In addition to precedent, my conclusion is supported by the historical importance of the protections offered by the Fifth Amendment and the longstanding tradition of protecting the Fifth Amendment right to counsel, once invoked, with particular vigilance.

¶ 132. The Fifth Amendment embodies the privilege against self-incrimination, which is "the essential mainstay of our adversary system."[13] "[O]ur accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth."[14] Because of its fundamental importance, "the privilege has consistently been accorded a liberal construction."[15]

¶ 133. In order to honor fully the privilege against self-incrimination, *Miranda* requires police to inform suspects of both the right to silence and the right to counsel, among other things, before custodial interrogation may occur. *Miranda,* 384 U.S. at 479. Although the right to silence is a crucial element of the privilege against self-incrimination, the Supreme Court has con-

---

[13] *Miranda,* 384 U.S. at 460.

[14] *Id.*

[15] *Id.* at 461.

firmed that "additional safeguards are necessary when the accused asks for counsel."[16]

¶ 134. This court should interpret and apply the Fifth Amendment and the relevant precedent with the goal of maintaining, rather than shrinking, the Fifth Amendment right to counsel. Consistent with the United States Supreme Court's declaration in *Miranda,* this court should construe precedent in favor of protecting the right to counsel. The majority fails at this task.

## III

¶ 135. The third reason for my conclusion is the pragmatic concern that underlies the right to counsel

---

[16] *Edwards v. Arizona,* 451 U.S. 477, 484 (1981).

*See also Fare v. Michael C.,* 442 U.S. 707, 719 (1979):

Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts. For this reason, the Court fashioned in *Miranda* the rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease.

At least one state has held that once a suspect invokes the right to counsel, he is incapable of waiving that right outside the presence of counsel. *See People v. Cunningham,* 400 N.E.2d 360 (N.Y. 1980).

The importance of the right to counsel in Wisconsin is evidenced by our legislature's criminalizing the denial of access to an attorney for a person in custody in certain situations. *See* Wis. Stat. § 946.75 ("Whoever, while holding another person in custody and if that person requests a named attorney, denies that other person the right to consult and be advised by an attorney at law at personal expense, whether or not such person is charged with a crime, is guilty of a Class A misdemeanor."). Wisconsin Stat. § 946.75 is not implicated by the facts of record in the present case.

and justifies treating an invocation of the right to counsel with great respect.

¶ 136. Although the United States Supreme Court has stated that voluntary confessions are " 'an unmitigated good,' essential to society's compelling interest in finding, convicting, and punishing those who violate the law,"[17] the Court has also recognized that "the pressure of custodial interrogation is so immense that it 'can induce a frighteningly high percentage of people to confess to crimes they never committed.' "[18] The presence of counsel is a safeguard against the possibility of false confessions.

¶ 137. When a false confession leads to a wrongful conviction, not only is the wrongfully convicted person harmed, but so is society. A wrongful conviction enables the guilty person to evade capture and commit more crimes. A wrongfully imprisoned individual costs the taxpayers substantial sums of money for trial, incarceration, and later exoneration in some cases.

¶ 138. False confessions are, unfortunately, unexceptional. Almost a quarter of the approximately 2,000 exonerations studied in a 2012 report involved a defendant who either falsely confessed or was falsely accused by a co-defendant who confessed.[19] According to recent data from the Innocence Project, approxi-

---

[17] *Maryland v. Shatzer,* 130 S. Ct. 1213, 1222 (2010) (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 181 (1991)).

[18] *J.D.B. v. North Carolina,* 131 S. Ct. 2394, 2401 (2011) (quoting *Corley v. United States,* 556 U.S. 303, 321 (2009) (citing Steven A. Drizin & Richard A. Leo, *The Problem of False Confessions in the Post-DNA World,* 82 N.C. L. Rev. 891, 906–07 (2004))) (citing *Miranda,* 384 U.S. at 455 n.23).

[19] *See* Saumel R. Gross & Michael Shaffer, National Registry of Exonerations, *Exonerations in the United States, 1989–2012* 41 (2012).

mately 25 percent of wrongful convictions overturned by DNA evidence in the United States have involved some form of false confession.[20] Wisconsin is not immune to the risk of false confessions and false convictions.[21]

¶ 139. For the reasons discussed above, I conclude that the majority errs in its application of the Fifth Amendment in the present case.

## IV

¶ 140. In any event, even if I agreed with the majority's Fifth Amendment analysis, which I do not, I would rely on the Wisconsin Constitution to reach a different result. As I noted in my dissent in *Hanson,* the United States Supreme Court in *Moran v. Burbine,* 475 U.S. at 428, expressly invited the states to promulgate their own rules governing the conduct of their police officers to protect the individual rights of citizens.[22] Wisconsin should accept that invitation.

¶ 141. As Justice Crooks noted in his dissent in *Ward* and as I noted in *Hanson,* we have serious concerns about the United States Supreme Court's

---

[20] *See* Innocence Project, *False Confessions & Recording of Custodial Interrogations, available at* http://www.innocence project.org/Content/False_ Confessions_Recording_Of_Custodial_Interrogations.php (last visited June 29, 2012).

[21] Of 891 individual exonerations listed by the 2012 study, Wisconsin had the eighth highest number of any state, with 21 exonerations. Saumel R. Gross & Michael Shaffer, National Registry of Exonerations, *Exonerations in the United States, 1989–2012* 35 (2012).

[22] *State v. Hanson,* 136 Wis. 2d 195, 220, 401 N.W.2d 771 (1987) (Abrahamson, J., dissenting) (citing *Moran v. Burbine,* 475 U.S. 412, 428 (1986)).

decision in *Moran*. The majority decisions in *Hanson* and *Ward* unfortunately provide an opportunity, and perhaps even an incentive, for law enforcement officers to prevent individuals from meaningfully exercising the Fifth Amendment right against self-incrimination and the Fifth Amendment right to counsel during custodial interrogation.

¶ 142. Like United States Supreme Court Justice John Paul Stevens' dissenting opinion in *Moran*, I conclude that allowing law enforcement officers to withhold from a suspect the fact that an attorney has arrived or to deceive a suspect's attorney places the choice of whether an attorney will be present during questioning in the hands of the law enforcement officers, not the individual being questioned. This outcome flies in the face of the Fifth Amendment protections that *Miranda* was meant to enforce.[23]

¶ 143. This court should reconsider its prior decisions regarding the obligation that law enforcement officers have to keep suspects informed of an attorney's availability. This court should join the many state courts that have rejected the United States Supreme Court's *Moran* decision and granted more robust constitutional protections to their people under their state constitutions or laws.[24]

---

[23] *Moran*, 475 U.S. at 453 (Stevens, J., dissenting).

[24] *See, e.g., State v. Stoddard*, 537 A.2d 446, 452 (Conn. 1988) ("[A] suspect must be informed promptly of timely efforts by counsel to render pertinent legal assistance."); *Bryan v. State*, 571 A.2d 170, 176 (Del. 1990) ("[A] purported waiver can never satisfy a totality of the circumstances analysis when police do not even inform a suspect that his attorney seeks to render legal advice."); *People v. McCauley*, 645 N.E.2d 923, 930 (Ill. 1994) ("[W]hen police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a

¶ 144. For the reasons stated, I write separately.

suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him." (quoted source omitted)); *State v. Reed,* 627 A.2d 630, 643 (1993) ("[W]hen, to the knowledge of the police, such an attorney is present or available, and the attorney has communicated a desire to confer with the suspect, the police must make that information known to the suspect before custodial interrogation can proceed or continue." (quoted source omitted)); *West v. Commonwealth,* 887 S.W.2d 338, 343 (Ky. 1994) ("[T]here is no logical basis for distinguishing between an attorney requested by an accused and an attorney requested, as in this case, by a family member on behalf of the accused . . . ."); *People v. Bender,* 551 N.W.2d 71, 79 (Mich. 1996) ("[I]n order for a defendant to fully comprehend the nature of the right being abandoned and the consequences of his decision to abandon it, he must first be informed that counsel, who could explain the consequences of a waiver decision, has been retained to represent him."); *Dennis v. State,* 990 P.2d 277, 286 (Okla. Crim. App. 2001) ("[C]ommon sense and fundamental fairness suggest the fact of the attorney's presence is important information a suspect would use in determining whether to waive or invoke his rights."); *Commonwealth v. Mavredakis,* 725 N.E.2d 169, 179 (Mass. 2000) ("When an attorney identifies himself or herself to the police as counsel acting on a suspect's behalf, the police have a duty to stop questioning and to inform the suspect of the attorney's request immediately."); *State v. Roache,* 803 A.2d 572, 579 (N.H. 2002) ("[I]nterrogating officers have a duty to stop questioning the suspect and inform the suspect that the attorney is attempting to contact him or her.").